## William J. Gordon et al. v. William Ward et al.

*Shipment of goods by vendors : Liability for loss : Agency : Carriers.* Defendants ordered from plaintiffs, at Cleveland, a bill of tobacco, and directed it sent to them at East Saginaw, by rail, giving as a reason for not sending it by water, that the railroad company would be liable for the risks. Plaintiffs sent the tobacco accordingly, accepting from the railroad company a bill of lading which exempted the company from liability for loss by fire. The tobacco was destroyed by the burning of the Detroit & Milwaukee Railroad warehouse, at Detroit, and defendants refused to pay because plaintiffs had accepted this restrictive bill of lading.

It appeared that the railroad companies at Cleveland had adopted this form of bill, several years previously, and notified shippers that they would not receive and send property on any other terms. The evidence was that no one, at the time this tobacco was shipped, could have got goods carried by rail, except on this restricted liability.

It was not shown that the companies were under any legal obligation to carry under the liability of common carriers, at the common law; and the evidence rather tended to show the contrary. It did not appear that plaintiffs were guilty of any concealment, in not informing defendants of the railroad custom. In an action by plaintiffs for the value of the goods,

*Held*, that there was nothing in this case to show that it was in their power to require the railroad companies to carry, on other terms, and therefore they were not in fault, and were entitled to recover.

*Heard January 10th. Decided January 13th.*

Case made after judgment, from Saginaw Circuit.

This was an action brought to recover of defendants the value of certain goods sold and delivered.

The declaration was on the common counts, and the plea the general issue.

The defendants, who lived at East Saginaw, purchased the goods of plaintiffs, who did business at Cleveland, Ohio, and directed them to send the same by railroad. The plaintiffs did so, and took a bill of lading which contained certain restrictions on the common law liability of the carrier; amongst which was exemption from loss by fire.

The goods were burned in the depot of the Detroit and Milwaukee Rail Road Co. at Detroit.

Judgment was rendered for defendants in the court below.

The facts are stated in the opinion.

GORDON *v.* WARD.

*Webber & Smith,* for plaintiffs.

The plaintiffs were directed to ship the goods in question by rail.

The defendants had done business previously with them to a considerable amount. The plaintiffs were not aware that defendants were ignorant of the usual and only mode of shipment of goods by rail at Cleveland; but, on the contrary, had reason to believe them acquainted with it.

Whether the conditions in the bill of lading were reasonable or unreasonable, whether the railroad company had a right to impose such conditions, or whether the conditions be void, are questions in which the plaintiffs have no interest in this case.

They were directed to ship by rail. They did ship by rail in the usual and only mode' by which shipment could be made, and, by so doing, fulfilled their contract, and the title of the goods became vested in defendants, and the loss must fall upon them.

*B. J. Brown,* for defendants.

1. A common carrier is bound to receive and carry all goods offered for transportation, subject to all the responsibilities incident to that employment, and is liable to an action, in case of refusal.— 1 *Pars. on Cont.* 676; 6 *Mich.* 257, 261.

2. But a common carrier may limit his liability by express contract or notice assented to, which is equivalent to express contract.— 6 *Mich.* 262; *Id.* 257; *Redf. Rail.* 270.

a. Such assent is presumed from previous dealings. — *Red. Rail.* 272, 274.

b. The terms of the contract between the plaintiffs and the railroad company is a fact to be proved as any other fact, by pertinent evidence.— 5 *Mich.* 379.

3. The court will presume the foreign law to be the same as our own, unless the contrary is shown.— 2 *Doug.* 515.

4. In the absence of authority from the defendants, the plaintiffs could not reduce the common law liability of the railroad company as a carrier, and charge the defendants. — 3 *Camp.* 414; 14 *East,* 375; 1 *Bing. N. C.* 671; 8 *T. R.* 330.

*a.* Such authority cannot be inferred from the custom of the Cleveland and Toledo R. R. Company, to issue receipts only in the form of the one taken on the shipment of these goods. — 2 *Sand. Sup. Ct.* 137.

It should also appear that the defendants knew of the custom at the time of ordering the goods, and acted in reference to it. — 3 *Mich.* 38.

COOLEY J.

The defendants ordered a bill of tobacco from the plaintiffs, at Cleveland, and directed it to be sent to them at East Saginaw, by rail, and it was sent accordingly. Unfortunately, it was burned while in transit, by the burning of the Detroit and Milwaukee railroad warehouse, at Detroit, and defendants now refuse to pay for it.

As delivery to the carrier, in pursuance of the instructions given, would be equivalent to a delivery to the defendants, and would have the effect to vest the title to the property in them, and put it at their risk, it is clear that they should pay for it unless there is something peculiar in this case which takes it out of the general rule.

The defendants say there is this peculiarity in the case which excuses them from payment: that the plaintiffs, without any authority, and in violation of the spirit of their instructions, entered into a special contract with the carriers, by receiving a bill of lading which exempted the carriers from liability for a loss occurring by fire, whereby the defendants are deprived of any remedy against the carriers for the loss, when, on the contrary, their duty was to send the goods under the carrier's common law liability. The plaintiffs reply that they followed instructions literally, and that there were at the time no carriers of goods by rail from

Cleveland who would receive and transport property at all except under these restrictive bills.

All the evidence we have on this subject is the following: All the railroad companies doing business at Cleveland, in 1864, adopted a form for a receipt or bill of lading such as was used in the present case, and resolved that they would receive and transport property on no other terms, and sent round copies of it to the plaintiffs and other shippers notifying them of their determination. From that time this form has been used exclusively, and railroad agents and others testify that property would not be received, at the time of the shipment in question, unless this form was used, and that it was of no use to present it for carriage on any other terms. In response to this the defendants say, that any such rule, regulation, and notice of the carriers was illegal; that they are compellable to transport goods under their common law liability; that it was the duty of plaintiffs to insist upon their doing so in this instance, and that, having failed to do so, and entered without authority into a special contract, the consequent loss should fall upon them, and not upon the defendants, whose rights they have unwarrantably assumed to barter away.

The difficulty with this position is, that we have before us, in this record, no evidence that the plaintiffs had it in their power to compel the carriers to transport the goods on any terms different from those in the special contract.

We are asked to assume that the railroad companies were common carriers, and subject to this obligation, on the principle that the law of another state is presumed to be the same as our own. But this principle is one to be received with some qualification. We cannot make that presumption as to those things which are usually matters of statutory regulation. — *Kermott v. Ayer,* 11 *Mich.* 181. There are differences in this State as to the liability, in certain cases, of those carriers which have been created

under our laws; and although those differences would not, perhaps, reach the point now in controversy, it is evident that if we were to assume that the Ohio railroad companies are corporations, created to carry on business as common carriers, it would still be a question of some interest whether we could further assume, from analogy to our own general or special laws, that the common law rules affecting their liability as carriers had not been relaxed.

Undoubtedly we can presume that the common law is in force in Ohio, and must construe the contracts of parties made in that State, and enforce their obligations, by a reference to it. But parties do not necessarily become common carriers at the common law, by receiving and transporting goods. There are questions of fact involved when it is claimed that any one has assumed that employment. The evidence before us tends to show that the railroad companies at Cleveland do not hold, and have not, for several years, held themselves out to carry property generally, but only for those persons who will enter into special contracts with them. We must apply the common law to the case in the light of this evidence; and we cannot say — because we are not informed — that these railroad companies are violating any law by their course of conduct. If they are, they may be liable to action; and if corporations, they may be liable to a forfeiture of corporate rights, by proceedings on behalf of the state. We have knowledge only of their course of business, which is not necessarily illegal; we cannot presume that all this time they have been acting in disregard of legal obligations; and it is not, therefore, in our power, to say that the plaintiffs did not send the property on the best available terms, and in honest compliance with the direction to send by rail.

One other objection of the defendants is somewhat plausible, and needs consideration. It is claimed that they were ignorant of the course of business of the Cleveland roads, and that their directions as to sending the goods, were given

in such form as made it incumbent on the plaintiffs to apprise them of the custom. The evidence on this point is from Ward himself, who says that when he directed the goods to be sent by rail, he expressly stated as the reason that, although it would cost more, yet the time would be shorter, and they would not be compelled to insure them, as they would if shipped by water, as the railroad companies would be liable for all risks.

If it sufficiently appeared that Ward was ignorant of the mode in which the railroad companies did business, and expected his goods to be sent by common carriers as insurers against all risks, and the plaintiffs, knowing the custom, and that they could not so send them, failed to inform him, there would be strong reason for saying they had never made legal delivery of the goods. But we do not think there is sufficient in the conversation testified to by Ward, to show that he had this distinct expectation, or that, if he had, he brought it home to the knowledge of the plaintiffs. It is clear that he did apprise them of an expectation, on his part, that risks, which he must assume for himself if the carriage was by water, he would be insured against if it was by land; and that this was stated by him as one of the inducements to send by the land route. The comparative security from loss by that route was in his mind, and was mentioned by him.

In looking over the bill of lading, it does not appear that the exemptions from liability are numerous, or such as are usually regarded by shippers as very important. They are such as are common in these contracts, even in this state, where railroad companies are not allowed to restrict their common law liability as carriers. The consignee is much better protected under them than he is when goods are sent by water. Unfortunately, the particular cause of injury which occurred in this case, is among those specified, and for which liability is not assumed; but the risk from this cause is comparatively slight and uncommon, and it

cannot be doubted that the defendants, if they had understood fully all the facts at the time, would have considered this bill of lading as affording them better protection than any they would have received from the master of a vessel, as, notwithstanding the special clauses, it still insured them against the most ordinary dangers.

We have no reason to suppose that the plaintiffs did not believe they had complied, in good faith, with the order given them. We have no reason to think they intentionally kept back any information. There was not sufficient in the conversation with Ward to apprise them that he was ignorant of the mode of doing business by the railroad companies, and would be dissatisfied and disappointed if the goods should be sent as they afterwards were. In fact there is nothing peculiar in this case ; nothing which does not frequently occur when wholesale dealers are ordered to ship by rail, and where they comply, as they believe, in good faith, with their instructions. We think the law does not warrant visiting the loss upon them under such circumstances.

The judgment must be reversed, and the plaintiffs must have judgment in this court for $301.40, the amount now due, together with costs of both courts.

The other justices concurred.